```
 1 │ RANDY S. GROSSMAN
   │ Acting United States Attorney
 2 │ Lawrence A. Casper
   │ Assistant United States Attorney
 3 │ California Bar No. 235110
   │ DEBORAH L. CONNOR
 4 │ Chief, Money Laundering & Asset
   │ Recovery Section, Criminal Division
 5 │ Mark A. Irish
   │ Senior Trial Counsel
 6 │ P.R. Bar No. 209107
   │ Federal Office Building
 7 │ 880 Front Street, Room 6293
   │ San Diego, California 92101-8893
 8 │ Telephone: (619) 546-6734
   │ Email: Lawrence.Casper@usdoj.gov
 9 │ Email: Mark.Irish2@usdoj.gov
```

**FILED**

JUL 14 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

10  Attorneys for United States of America

                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,              Case No. 15CR950-BEN

                    Plaintiff,
          v.                            PLEA AGREEMENT

ROBERTO GALLEGOS-LECHUGA,

                    Defendant.

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, RANDY S. GROSSMAN, Acting United States Attorney, Lawrence A. Casper, Assistant United States Attorney, Deborah L. Connor, Money Laundering & Asset Recovery Section and Mark A. Irish, Senior Trial Counsel, Money Laundering & Asset Recovery Section, Criminal Division, and Defendant ROBERTO GALLEGOS-LECHUGA, with the advice and consent of Nancee S. Schwartz, counsel for Defendant, as follows:

Plea Agreement                                    Def. Initials RGL
                                                          15CR950-BEN

I

## THE PLEA

Defendant agrees to plead guilty to Count One of the Third Superseding Indictment charging Defendant with:

knowingly combining, conspiring, and agreeing with other persons to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, including:

    a. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, the distribution of Controlled Substances, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

    b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, that is, the distribution of Controlled Substances, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i) and (h); and Title 18, United States Code, Section 2.

II

## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

Plea Agreement      2

Def. Initials _RCGL_
15CR950-BEN

1. There was an agreement between two or more persons to knowingly and intentionally combine, conspire, and agree with others to transport, transmit, or transfer, or attempt to transfer, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States;

2. Defendant became a member of the conspiracy knowing of the objective to transport, transmit, or transfer, or attempt to transfer, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States and intending to help accomplish that object;

3. The monetary instrument or funds involved in the transportation, transmission or transfer represented the proceeds of a specified unlawful activity, namely a conspiracy to import cocaine, methamphetamine and heroin into the United States in violation of 21 U.S.C. §§ 952, 960 and 963 (for concealment money laundering);

4. Defendant knew that the monetary instrument or funds involved in the transportation, transmission or transfer represented proceeds of some form of unlawful activity (for concealment money laundering);

5. Defendant knew that the transportation, transmission or transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity. (for concealment money laundering); and

6. Defendant knew that the transportation, transmission or transfer was designed in whole or in part to promote the carrying on of specified unlawful activity (for promotion money laundering).

B.  ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. From in or about August 2013 until in or about November 2015, Defendant was a manager and supervisor in a drug trafficking and money laundering organization ("DTO/MLO") that: (1) smuggled multi-kilogram quantities of cocaine, methamphetamine and heroin from Mexico to the Southern District of California and elsewhere in the United States; and (2) smuggled proceeds from the sales of illegal narcotics in the United States to Mexico. The DTO/MLO was a part of, or affiliated with, the Sinaloa Cartel and involved more than five participants.

2. Defendant managed and supervised couriers who smuggled narcotics proceeds from the United States to Mexico and ensured that those couriers picked up the proceeds from the correct sources in the United States. Those sources were primarily located in Southern California. The MLO members used various methods to smuggle those proceeds from the United States to Mexico and to convert the U.S. bulk currency into Mexican pesos. In turn, those proceeds were transferred to money exchange houses in Tijuana, in Sinaloa, and elsewhere in Mexico and, in connection with his activity, Defendant received payment. This activity was part of an agreement by Defendant and others to transport, transmit, or transfer, these monetary instruments or funds from locations within the United States to Mexico.

3. Defendant knew that the transportation, transmission or transfer of these funds was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the illicit narcotics importation and trafficking. Defendant also knew that the transportation, transmission or transfer was designed to promote the carrying on of specified unlawful activity, that is, drug trafficking.

4. During the period described above, Defendant worked with K.B and other DTO members to smuggle cocaine, heroin and methamphetamine from Mexico to the United States. Defendant admits that, during the above period, he was involved with

the smuggling and distribution of at least 16 kilograms of methamphetamine (actual); 25 kilograms of cocaine; and 5 kilograms of heroin from Mexico to the United States.

5. From August 23, 2013 to August 27, 2013, Defendant communicated with "Ringuito" to assist in coordinating the smuggling of a load of drugs from Mexico to the United States. Defendant was also in contact with at least one other co-conspirator to further this effort. Once inside the United States, law enforcement stopped the vehicle and the driver, K.B., consented to a vehicle search, during which multiple packages of cocaine and heroin were hidden inside the vehicle. Court-authorized intercepted communications showed that, shortly after the vehicle was stopped, Defendant was notified by whomever was providing the transportation that the vehicle had been stopped and that a GPS being used by co-conspirators to track the drugs had been disconnected. Defendant then told "Ringuito" that the the drugs had almost certainly been seized.

6. On October 1, 2013, law enforcement lawfully intercepted communications between Defendant and "Chikoroteo." Chikoroteo explained that, before a courier delivered United States currency to another courier, both couriers would receive a serial number from a U.S. one dollar bill. The delivering courier would ask the receiving courier for the dollar bill with that serial number to ensure it matched. Then, the delivering courier would keep the one dollar bill as a receipt. During these communications, Defendant and Chikoroteo then coordinated a currency exchange between the respective couriers in the United States. Similarly, on October 10, 2013, law enforcement lawfully intercepted communications between Defendant and Bianca Acedo-Ojeda during which Defendant arranged to have a courier deliver bulk U.S. currency that was supposed to be $350,000 to one of Acedo-Ojeda's couriers in Los Angeles, California. When Acedo-Ojeda's courier brought the money to Mexico, intercepted communications showed that the actual amount was determined to be $309,975. Intercepted communications also showed that the two (Defendant and Bianca Acedo-Ojeda) previously had similar dealings.

### III

### PENALTIES

The crime to which Defendant is pleading guilty carries the following penalties:

A.  a maximum 20 years in prison, pursuant to 18 U.S.C. § 1956(a)(2)(B);

B.  a maximum $500,000 fine or twice the value of the monetary instrument or funds involved in the transportation, transmission or transfer, whichever is greater, pursuant to 18 U.S.C. § 1956(a)(2)(B);

C.  a mandatory special assessment of $100 per count, pursuant to 18 U.S.C. § 3013(a)(2)(A); and

D.  a term of supervised release of not more than three (3) years, pursuant to 18 U.S.C. § 3583(b)(2). Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release.

## IV
### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A.  Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B.  A speedy and public trial by jury;

C.  The assistance of counsel at all stages;

D.  Confront and cross-examine adverse witnesses;

E.  Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F. Not testify or have any adverse inferences drawn from the failure to testify.

G. Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## V
## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI
## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA and MONEY LAUNDERING & ASSET RECOVERY SECTION

This plea agreement is limited to the United States Attorney's Office for the Southern District of California and the Money Laundering & Asset Recovery Section, Criminal Division, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense

counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

### PARTIES' SENTENCING RECOMMENDATIONS

A.   SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence,

the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1. Base Offense Level pursuant to § 2S1.1(a)(1)    38
2. BOL increased under § 2S1.1(b)(2)(B)    +2
3. Aggravating Role § 3B1.1(B)    +3
4. BOL decreased for Acceptance of Responsibility under § 3E1.1    -3
5. Expedited Resolution/Combo of Circs. § 5K2.0    -2

Total adjusted offense level    38

B. **ACCEPTANCE OF RESPONSIBILITY**

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer; or
4. Breaches this plea agreement in any way.

C. **FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553**

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

D.  **NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY**

The parties have **no** agreement as to Defendant's Criminal History Category.

E.  **"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION**

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F.  **PARTIES' RECOMMENDATIONS REGARDING CUSTODY**

The Government will recommend that Defendant be sentenced to the low end of the advisory guideline range recommended by the Government at sentencing.

G.  **SPECIAL ASSESSMENT/FINE**

1.  **Special Assessment**

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2.  **Fine**

The parties will not recommend imposition of a fine due to Defendant's limited financial prospects and because the cost of collection, even taking into account the Inmate Responsibility Program, likely would exceed the amounts that could reasonably be expected to be collected.

Plea Agreement                    11                    Def. Initials _____
                                                                        15CR950-BEN

H.  SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least two thirds (2/3) of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

XI

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order. The ony exception is that Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective counsel.

XII

**BREACH OF THE PLEA AGREEMENT**

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

    1.    Failing to plead guilty pursuant to this agreement;

2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or
7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any

Plea Agreement 13 Def. Initials *RChl*
15CR950-BEN

evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

Plea Agreement                          14                       Def. Initials _[initials]_
                                                                 15CR950-BEN

## XV

## **DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

DATED 6/28/21

RANDY S. GROSSMAN
Acting United States Attorney

Lawrence A. Casper
Assistant U.S. Attorney

DATED 6/28/21

DEBORAH L. CONNOR
Chief, Money Laundering & Asset Recovery Section

Mark A. Irish
Money Laundering & Asset Recovery Section

DATED 6/04/21

Nancee S. Schwartz
Defense Counsel

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

6/26/2021
DATED

ROBERTO GALLEGOS-LECHUGA
Defendant

Plea Agreement                    15                    Def. Initials ___
                                                        15CR950-BEN